**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GARRY S. ZIGICH, JR.,

    Petitioner,

v.

STEPHEN JOHNSON, et al.,

    Respondents.

Civil Action No. 17-2659 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, filed by Garry S. Zigich, Jr. ("Petitioner"). Petitioner, currently confined at the New Jersey State Prison in Trenton, New Jersey, challenges a sentence imposed by the State of New Jersey for first-degree murder. For the reasons stated below, the Court denies the Petition.

**I.    FACTUAL BACKGROUND**

For the purposes of this Memorandum Opinion, the Court recites only the relevant facts and, unless otherwise cited, relies on the facts as summarized by the state trial court during Petitioner's post-conviction relief ("PCR") proceeding in *State v. Zigich*, Indictment No. 08-09-1327, slip op. at 1-22 (N.J. Super. Ct. Law Div. Nov. 6, 2013), ECF No. 5-5 at 1 ("*Zigich I*"). On March 18, 2008, Brittany Cena was found dead in the basement of her family residence in Toms River. After some initial investigation, the police identified Petitioner, Cena's cousin who lived in the basement apartment, as a suspect. They learned that Petitioner had checked himself into a nearby hospital for treatment, and subsequently arrested Petitioner there.

When the police questioned Petitioner, he told them that he heard "voices," and was responding to those voices when Cena walked in on him. As Petitioner tried to explain to Cena why he was speaking, Cena began to laugh at him. After the voices told Petitioner to hurt Cena, Petitioner threw Cena on the ground and choked her. A grand jury indicted Petitioner for first-degree murder.

Petitioner was assigned counsel and recanted the story to his counsel. He explained to counsel that upon being questioned by the police, he panicked and decided he could not tell them the real story, so he made up the story about the voices. Petitioner informed counsel that the night before the murder, he was involved in heavy drinking and drug use, and was severely intoxicated when he returned home. While there, in the dark, he felt a hand on his shoulder. He turned around and "saw two eyes and a ring of fur." *Zigich I*, slip op. at 10. Petitioner put the unknown figure in a chokehold but "never formed any intent to choke this thing to death." *Id.* He then blacked out. When Petitioner awoke, he found his cousin dead, and realized he may have choked her to death. In a state of shock, he went to the hospital.

Based on the new story, Petitioner asked whether he could raise a voluntary intoxication defense. Counsel allegedly told Petitioner that voluntary intoxication was not a defense to first-degree murder, although at the PCR hearing, counsel testified that he merely informed Petitioner that the defense was unlikely to succeed based on the facts of his case. Counsel filed a motion to suppress Petitioner's statements to the police at the hospital. The court denied the motion. Petitioner filed an interlocutory appeal, which was also denied. Concluding that the suppression issue was Petitioner's best defense, counsel negotiated a guilty plea that limited Petitioner's sentencing exposure to 50 years imprisonment, with the opportunity to seek further reduction, and preserved the right to appeal the suppression issue. Counsel explained to Petitioner

2

that while the suppression issue would still be available on appeal after trial, a guilty verdict by the jury would reduce his chance of success on appeal, as the appellate court may conclude that it was harmless error. By pleading guilty, Petitioner limited his sentencing exposure and increased his opportunity for success on appeal, which counsel opined had a good chance to succeed. Petitioner pled guilty.

At sentencing, the trial court found several aggravating factors but no mitigating factors, and sentenced Petitioner to 50 years imprisonment. Petitioners' conviction and sentence were affirmed on appeal. After his judgment became final, Petitioner filed a PCR application, arguing, among other things, that counsel was ineffective in advising him that voluntary intoxication was not a defense. As part of his application, Petitioner submitted an expert report as evidence that counsel was incorrect and that Petitioner had a viable defense. The PCR court refused to allow the report into evidence, finding that it was irrelevant to Petitioner's ineffective assistance of counsel claim. PCR was ultimately denied. The instant Petition followed.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ for habeas corpus shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

3

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

## III. DISCUSSION

Petitioner asserts three grounds for habeas relief: (1) trial counsel erred by advising him that he did not have a viable intoxication defense, and that he would "certainly prevail" on appeal regarding his suppression motion, both of which erroneously induced him to plead guilty; (2) the PCR trial court denied him due process when it refused to consider his expert report; and

4

(3) appellate counsel was ineffective for failing to raise an excessive sentence claim on appeal. The Court rejects these claims.

A. **Ground One**

In this ground, Petitioner asserts that trial counsel provided erroneous advice regarding the strength of his case, which induced him into pleading guilty, so his plea was not knowing and voluntary. The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (citation omitted). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[1] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083.

---

[1] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

5

The same two-part *Strickland* standard, described above, is applicable to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (citation omitted). The defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

Here, Petitioner asserts that trial counsel's advice regarding the unavailability of a voluntary intoxication defense, and the "certainty" of prevailing on his suppression issue on appeal, were both erroneous, but were critical to Petitioner's decision to plead guilty.[2] The state court held that, with regard to the intoxication defense, counsel did not provide erroneous advice. Based on Petitioner's detailed recollection of events before, during, and after the murder, it was reasonable for trial counsel to conclude he would not be able to show at trial that Petitioner had the requisite degree of intoxication to prevail on such a defense. *State v. Zigich*, No. A-2845-13T1, slip op. at 9 (N.J. Sup. Ct. App. Div. Aug. 23, 2016), ECF No. 5-5 at 36 ("*Zigich II*"). With regard to the suppression issue, the state court held that counsel provided Petitioner "with an entirely accurate analysis of the options available to [Petitioner] and an entirely reasonable assessment of the likely consequences of [pleading guilty]." *Zigich I*, slip op. at 23. "The Court finds as a matter of fact that [Petitioner] accepted the plea offer negotiated by [counsel] on a totally voluntary basis and that he had the benefit of competent advice and assistance provided by [counsel]." *Id.*

---

[2] Whether counsel informed Petitioner that voluntary intoxication was simply not a defense to murder, or that it was unlikely to succeed in his particular case, is insignificant; the relevant issue is whether counsel was correct that Petitioner did not have a viable defense.

6

The state court's decision was a reasonable application of established federal law, based on a reasonable determination of the facts. On the intoxication defense, the record clearly shows that Petitioner had a detailed recollection of the events before, during, and after the murder. In both versions of the story Petitioner recounted, he admitted to having put someone in a chokehold, even if it is unclear whether he knew who it was. The state court concluded that, under state law, the facts of the case did not support an intoxication defense, so counsel provided competent advice. It is not for this Court to determine the scope of the intoxication defense under state law. "Absent extraordinary circumstances, the state courts will have the final word on the substantive criminal law." *Gillespie v. Ryan*, 837 F.2d 628, 632 (3d Cir. 1988); *see Knight v. Beyer*, No. 88-3180, 1989 WL 68618, at *4 (D.N.J. June 22, 1989) ("[A] state court's interpretation of a state criminal statute is binding on a federal court reviewing the merits of a habeas corpus petition."); *see also Buehl v. Vaughn*, 166 F.3d 163, 175-76 (3d Cir. 1999) (holding that the state court's interpretation of its own statute is only unconstitutional if it is "an obvious subterfuge to evade consideration of a federal issue" or "plainly untenable") (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 n.11 (1975) & *Ward v. Love Cty.*, 253 U.S. 17, 22 (1920)). Moreover, because the state court concluded that counsel provided competent advice, "AEDPA review is 'doubly deferential,' because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. In such circumstances, federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 136 S.

Ct. 1149, 1151 (2016). There is nothing in the record to support the conclusion that either counsel's advice or the state court's decision was unreasonable.[3]

On the suppression issue, it was reasonable for the state court to find that counsel provided competent advice for the purposes of the plea, because the accuracy of counsel's prediction regarding appeal was not a factor in Petitioner's decision to plead guilty. Since the plea agreement preserved his right to argue the suppression issue on appeal, Petitioner was not deciding whether to forego the argument by pleading guilty or preserve it by going to trial—under the facts of this case, he would have been able to raise that issue in either scenario. Instead, Petitioner's decision was entirely based on which option provided him with (1) a potentially lesser sentence, and (2) a greater likelihood of success on appeal. The accuracy of counsel's prediction was entirely irrelevant to the plea decision, as Petitioner was going to appeal regardless of which option he chose—whether he would *succeed* was simply not a factor. In other words, with respect to the appeal, Petitioner had nothing to lose, but much to gain, by pleading guilty, regardless of what prediction counsel may have made. Because Petitioner failed to establish that the state court's decision was unreasonable, relief on this ground is denied.

---

[3] The Court notes that the crux of Petitioner's argument regarding the intoxication defense appears to be an insistence that he had no intention to kill *his cousin*, and that he did not intend to apply deadly force in his application of the chokehold. Under state law, however, neither is a required element of murder. "By operation of the doctrine of transferred intent, murder is also established by proof that the defendant acted to purposely or knowingly kill one victim but caused the death of another instead." *State v. Gaines*, 377 N.J. Super. 612, 621 (App. Div. 2005). "To be guilty of murder, defendant must have knowingly or purposefully inflicted serious bodily injury with actual knowledge that the injury created a substantial risk of death and that it was highly probable that death would result." *State v. Fleming*, Indictment No. 04-04-1790, 2007 WL 4355476, at *4 (N.J. Super. Ct. App. Div. Dec. 12, 2007). It appears that Petitioner does not understand that his conduct was sufficient to support a guilty verdict, even if he did not intend to kill his own cousin—he knowingly and purposefully applied potentially deadly force to a human being and killed said human being. Regardless, none of this speaks to the accuracy of counsel's advice regarding the intoxication defense.

B. <u>**Ground Two**</u>

In this ground, Petitioner argues that the PCR trial court erred when it refused to consider the expert report he submitted regarding the validity of his potential intoxication defense.[4] That is not, however, a valid claim on federal habeas. "[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) (emphasis in the original). In other words, "alleged errors in collateral proceedings . . . are not a proper basis for habeas relief from the original conviction. It is the original trial that is the 'main event' for habeas purposes." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004); *see Poole v. New Jersey*, No. 09-1923, 2010 WL 2952118, at *11 (D.N.J. July 21, 2010) (finding no cognizable habeas claim when the PCR court omitted arguments from the PCR records).

Furthermore, on habeas review, federal courts only ask whether appropriate procedural safeguards were provided to Petitioner, and do not second-guess whether the state court's evidentiary findings were substantially correct. *See* 28 U.S.C. § 2254(e); *Sumner v. Mata*, 449 U.S. 539, 546 (1981) ("[Deference to the state court] applies to cases in which a state court of competent jurisdiction has made 'a determination after a hearing on the merits of a factual issue.'"). Here, the state court held that the expert report was not relevant to Petitioner's claim because his claim concerned the competency of his trial counsel, not the validity of his intoxication defense. Accordingly, the PCR court was fully capable of deciding the issues before it without expert testimony. *See Zigich II*, slip op. at 10. Even if this was a cognizable claim on habeas, it appears

---

[4] The other allegations of supposed impropriety by the PCR court (*see* Pet. 8) are essentially mere disagreements with the PCR court's findings. Such arguments are subsumed under Ground One, and the Court does not consider them as independent claims.

9

that Petitioner received all the procedural due process protection the Constitution requires; he was able to present and argue the admissibility of the evidence, and the state court simply found the evidence irrelevant.

To the extent this claim can be construed to challenge the state court's finding that trial counsel was not ineffective as factually unreasonable because the court refused to consider a key piece of evidence, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Court has reviewed the expert report in question, (*see* ECF No. 1-1 at 108-110), and nothing in the report provides clear and convincing evidence that the state court's finding was incorrect—the report did not conclude that an intoxication defense was clearly available, nor did it contain any discussion regarding whether trial counsel's advice was ineffective. Weighing the expert report against the other evidence in the record, it was not unreasonable for the state court to conclude that the expert report was not relevant to Petitioner's claim. Relief on this ground, accordingly, is denied.

### C. **Ground Three**

In this ground, Petitioner argues that his appellate counsel was ineffective because he did not raise an excessive sentence claim on appeal. The state court held that "[n]othing in the record suggests the sentencing court abused its discretion in finding aggravating factors and no mitigating factors. Furthermore, in pleading guilty, defendant avoided an additional twenty years of imprisonment. Plainly defendant did not suffer prejudice." *Zigich II*, slip op. at 11. As such, it rejected Petitioner's ineffective assistance of appellate counsel claim. *Id.*

The state court's decision was a reasonable application of established federal law based on a reasonable determination of the facts. On federal habeas, it is Petitioner's burden to demonstrate

his entitlement to relief. Beyond stating that appellate counsel failed to raise an excessive sentence claim, however, Petitioner provides no factual allegations or evidence to demonstrate how or why the sentence was excessive. Moreover, the fifty-year sentence Petitioner received was the very sentence he bargained for in his plea agreement. There is simply no basis for the Court to question the state court's determination that Petitioner suffered no prejudice. As the Supreme Court has held, "[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991). Here, there is no support for Petitioner's argument that the fifty-year sentence, imposed for a conviction of first-degree murder, was unconstitutional. Consequently, relief on this ground is denied.

### D. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV. CONCLUSION

For the reasons set forth above, the Petition is DENIED, and the Court DENIES a certificate of appealability.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: April 9, 2019